UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

PAUL J. TANNER                                    CIVIL ACTION

v.                                                NO. 17-5141

BD LAPLACE, LLC                                   SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court is the defendant's motion for summary
judgment pursuant to Rule 56 and the plaintiff's motion to strike.
For the following reasons, the motion to strike is DENIED and the
motion for summary judgment is GRANTED.

**Background**

Paul Tanner claims that his former employer violated the
Americans with Disabilities Act when it mandated that he undergo
a medical evaluation as a condition of continued employment; he
refused.[1]

BD LaPlace, LLC is an industrial steel manufacturer based in
LaPlace, Louisiana.  BD LaPlace uses several cranes to unload,

---

[1] Insofar as Mr. Tanner has failed to submit any competent evidence
to controvert the material facts outlined in the defendant's
statement of undisputed facts, those facts are deemed admitted for
the purposes of the defendant's motion.  <u>See</u> Fed. R. Civ. P.
56(c)(1); <u>see</u> <u>also</u> Local Rule 56.2.

sort, and load scrap metal for transfer, often in close proximity to one another. Paul Tanner was employed at BD LaPlace as a crane operator from 2006 until early March 2016, and was a member of the United Steel Workers Union ("Union").

In early 2016, BD LaPlace's Human Resource Manager, Kristen Barney, received several complaints of Tanner's erratic workplace behavior and initiated an investigation. BD LaPlace's investigation confirmed that coworkers had similar concerns regarding Tanner's behavior and workplace safety; the coworker concerns included instances where Tanner prayed aloud for people at work, threw rosary beads at a worker, told a supervisor "you're not my boss" in response to a request to wear a safety vest, told a coworker he would get him arrested if he didn't turn off his music and slapped the coworker's hand down during the confrontation, and that Tanner operated his crane too close to other cranes.

Ms. Barney met with BD LaPlace management and with Union representatives. With the Union's support, Ms. Barney and BD LaPlace referred Tanner to the Employee Assistance Program ("EAP") to undergo a mandatory "fitness for duty evaluation" ("FFDE"),[2]

---

[2] The EAP, which was supported by the Union and part of the CBA, states: "When an employee's job performance or attendance falls

which would include a mental and physical evaluation. Tanner was then informed of the complaints against him, that he would be placed on paid leave pending his referral to the EAP, and that he must submit to a mandatory FFDE to be administered by a mental health professional. Ultimately, Tanner refused to submit to the FFDE.[3] BD LaPlace determined that Tanner had abandoned his job and processed this as a voluntary resignation, effective on March 4, 2016.

In late April 2016, nearly two months after Tanner's discharge, Tanner received a check from BD LaPlace for $1,000. Around the same time, BD LaPlace issued ratification bonuses to all current employees as of April 4, 2016. BD LaPlace, noting that the check was issued by mistake to Tanner and other former employees, placed a stop payment on the $1,000 check.

On September 26, 2016, Tanner filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that BD

---

below acceptable standards, the employee may then be referred to the EAP by a supervisor or HR representative. The company will not attempt to diagnose the problem."

[3] Tanner admits he was concerned the evaluation was a pretext to commit him to a mental institution. Unknown to BD LaPlace at the time, one year before it ordered the FFDE, Tanner had been committed and placed on a three-day involuntary psychiatric hold for an incident at a church. Tanner admits that the police responded to the church incident, and that he made statements to the church priest about spilling blood and also refused to leave.

LaPlace discriminated against him on the basis of disability and he was terminated because he failed to submit to the FFDE. Tanner affirms in his filing with the EEOC that he does not have a disability, stating "I do not have a disability but employer fired me for refusing to submit to a medical examination (both physical and mental) without cause or concern."

On May 1, 2017, seven months after the EEOC complaint, Tanner applied for Social Security benefits in which he claimed that he became disabled on March 1, 2016. In related filings with the Social Security Administration (SSA), Tanner submits that a neck injury, ankle injury, and tissue damage cause him pain, he stopped working on March 1, 2016, and the reason he stopped working is due to his medical conditions. Tanner affirmed that all information in connection with his claim for benefits was true and he understood that making false statements or representations was a criminal offense. Then, on October 9, 2017, the SSA found that Tanner was, in fact, disabled and, under its rules, backdated his disability to February 10, 2016 – one month prior to his refusal to submit to the FFDE.

On May 23, 2017, Tanner sued BD LaPlace alleging that forcing him to submit to the FFDE to continue employment violated the Americans with Disabilities Act ("ADA"). He also alleges claims

4

for retaliation and disability discrimination under the ADA and for unpaid wages under the Louisiana Wage Payment Act. He seeks back pay, front pay, bonus payments, attorney's fees, and $100,000 in emotional stress.

The defendant now moves for summary judgment and the plaintiff moves to strike five of the defendant's exhibits as inadmissible.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he

must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable ... or is not significantly probative," summary judgment is appropriate. Id. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the

nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

In resolving a motion for summary judgment, the Court "may only consider admissible evidence." Coleman v. Jason Pharmaceuticals, 540 Fed. Appx. 302, 306 (5th Cir. 2013)(citing Fed. R. Civ. P. 56(c)(2) and Mersch v. City of Dallas, 207 F.3d 732, 734-35 (5th Cir. 2000)). Federal Rule of Evidence 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Affidavits and declarations used to support a motion must only "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

II.

Tanner seeks to narrow the scope of the summary judgment record, urging the Court to strike the following exhibits: 1, the Declaration of Kristin Barney, BD LaPlace's Human Resource Manager; 1A, Criteria for Crane Operator; 1B, contemporaneous

notes of BD LaPlace's investigation; 1D, EAP application; and, 1E, BD LaPlace's and the Union's Collective Bargaining Agreement. Tanner argues that these exhibits contain inadmissible hearsay or that they lack authentication and, therefore, are not competent evidence for purposes of summary judgment. The defendant counters that Tanner's generic and conclusory challenge is improper and that, even if parsed, each item of evidence is admissible and authenticated. The Court agrees.

Tanner characterizes Exhibit 1 as hearsay, yet declines to specify which paragraphs constitute hearsay, nor explain why. The generic intonation of the Rules of Evidence coupled with the words "hearsay" and "not authenticated" offer mere conclusory challenges to evidence. It is not this Court's duty to parse and infer what the plaintiff intends to strike. See Hoffman v. Bailey, 257 F. Supp. 3d 801, 825 (E.D. La. 2017). The Court declines to examine each paragraph of Ms. Barney's declaration to determine the merit, if any, of Tanner's wholesale objection. Nor will the Court belabor itself by making arguments on Mr. Tanner's behalf when his counsel has failed even to suggest that the evidence he purports to challenge cannot be presented in a form that would be admissible in evidence consistent with Rule 56(c)(2). Tanner's motion to strike Exhibit 1 has no merit.

Tanner's objections to the other exhibits are equally vague and unsupported. Tanner asserts that Exhibits 1A, 1B, 1D, and 1E lack necessary information that would show that the exhibits apply to Tanner's employment. Under Federal Rule of Evidence 803(6), records of a regularly conducted activity are exceptions to the rule against hearsay if:

> (a) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
> (b) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (c) making the record was a regular practice of that activity;
> (d) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (e) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Here, Ms. Barney stated that she is "familiar with and [is] a custodian of the records of regularly conducted activity of BD LaPlace with respect to personnel and payroll matters, including but not limited to, personnel files, job duties, BD LaPlace policies and procedures, its Collective Bargaining Agreement, and wage a bonus records." The Court finds that the requirements of Rule 803(6) are met and notes that Tanner fails to provide a specific showing that the evidence indicates a lack of trustworthiness or otherwise cannot be presented in a form that

would be admissible in evidence.[4]  The plaintiff's motion to strike is without merit.  The Court now turns to the defendant's motion for summary judgment.

III.

Tanner alleges violations of the ADA including retaliation and disability discrimination, as well as a violation of the Louisiana Wage Payment Act ("LWPA") for unpaid wages.  Notably, each of Tanner's ADA claims are anchored to BD LaPlace's requirement that he submit to a medical examination as a condition of continued employment.  The defendant seeks summary judgment in its favor on each claim.

*A.*

"The ADA prohibits an employer from discriminating against a 'qualified individual with a disability on the basis of that disability.'"  See E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 694 (5th Cir. 2014)(citation omitted); see also 42 U.S.C. §

---

[4] Insofar as Tanner disputes the admissibility of Barney's reference to coworker complaints about Tanner's erratic behavior, BD LaPlace submits that this is not hearsay (because coworker statements are not being used to prove the truth of the matter asserted), Barney's impressions of what was reported to her are present-sense impression exceptions under Rule 803(3), and Tanner admitted to most of the events underlying the coworker complaints. Again, this being supported by the record and the Federal Rules of Evidence, the Court agrees.

12112(a)("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to...the discharge of employees,...and other terms, conditions, and privileges of employment."). Title 42, U.S.C. § 12112(d)(1) provides that "[t]he prohibition against discrimination...shall include medical examinations and inquiries." Subsection (d)(4)(A) governs prohibited examinations and confers on employers the right to conduct *necessary* medical exams to ensure workplace safety:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

In other words, medical exams are expressly permitted by the ADA and implementing regulations when job-related. Id.; 29 C.F.R. 1630.14(c). As to whether an examination is "job-related and consistent with business necessity," the EEOC provides this guidance:

> [a] medical examination of an employee may be "job related and consistent with business necessity" when an employer "has a reasonable belief, based on objective evidence, that: (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat due to a medical condition."

Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act, https://www.eeoc.gov/policy/docs/guidance-inquiries.html (last visited March 25, 2019). The employer bears the burden of demonstrating business necessity. Brownfield v. City of Yakima, 612 F.3d 1140, 1146 (9th Cir. 2010)(citing Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007)).

"When a plaintiff can offer only circumstantial evidence to prove a violation of the ADA, this court applies the McDonnell Douglas burden-shifting framework." Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 227 (5th Cir. 2015)(citation omitted). Under this framework, the plaintiff must first make a prima facie showing of disability discrimination. Id. If this showing is made, a presumption of discrimination arises, and the employer must "articulate a legitimate non-discriminatory reason for the adverse employment action." Id. The burden then shifts to the plaintiff to show that the articulated reason is a pretext for discrimination. Id.

To establish a prima facie case of discrimination under the ADA, the plaintiff must prove: (1) that he has a disability or was regarded as disabled; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on

account of his disability.  <u>Cannon v. Jacobs Field Servs. N. Am.,</u>
<u>Inc.</u>, 813 F.3d 586, 590 (5th Cir. 2016). If he makes that showing,
a presumption of discrimination arises, and the employer must
"articulate a legitimate non-discriminatory reason for the adverse
employment action." <u>E.E.O.C. v. Chevron Phillips Chem. Co., LP</u>,
570 F.3d 606, 615 (5th Cir. 2009).  The burden then shifts to the
plaintiff to produce evidence from which a jury could conclude
that the employer's articulated reason is pretextual. <u>See</u> <u>id</u>.  To
prevail on a perceived disability claim, a plaintiff must show
that he "has been subjected to an action prohibited under [the
ADA] because of an actual or perceived physical or mental
impairment whether or not the impairment limits or is perceived to
limit a major life activity." <u>Burton v. Freescale Semiconductor,</u>
<u>Inc.</u>, 798 F.3d 222, 230 (5th Cir. 2015)(quoting 42 U.S.C. §
12102(3)(A)).


*B.*

BD LaPlace seeks judgment as a matter of law dismissing
Tanner's claim that it violated the ADA when it mandated that he
submit to the FFDE.  BD LaPlace submits that mandating the medical
examination was expressly permitted by the ADA because it was job-
related and consistent with business necessity. Tanner responds

that the ADA protects employees from adverse employment actions stemming from their refusal to submit to medical inquiries. Tanner further contends that BD LaPlace had no reasonable concerns about his ability to perform his job. The Court disagrees; Tanner wholly fails to offer any evidence to dispute BD LaPlace's submission.

Tanner was employed as a crane operator, a safety-sensitive position. The position requires communication skills, given that cranes are operated in close proximity to other cranes. BD LaPlace Human Resources Manager, Ms. Barney, received several complaints from coworkers indicating that Tanner was behaving erratically. Ms. Barney noted that Tanner's coworkers were nervous and anxious about working with him. The record shows that complaints were lodged (and Tanner himself admitted) that he would pray aloud while at work; there were also complaints regarding instances of physical confrontation, including an instance where he tossed rosary beads towards a coworker and slapped another's hand down. Tanner also defied safety protocols when he refused to wear a safety vest, and one coworker informed HR that Tanner had operated his crane too close to other cranes in the yard.[5] On these facts, BD LaPlace

---

[5] Although BD LaPlace did not have knowledge of this at the time, Tanner himself acknowledges that, not long before his termination, he had been involuntarily committed for a mental health evaluation

14

had legitimate reasons to question Tanner's capacity to perform his crane operating duties and to take proactive steps to ensure workplace safety. Tanner fails to offer any evidence that would place these record facts in dispute, or otherwise create a triable issue as to whether BD LaPlace's decision to refer him for a medical examination was job-related and a business necessity.

The record shows that Tanner's referral to the EAP and FFDE was not a unilateral decision made by Ms. Barney, but, rather, was the course of action taken after an investigation into several complaints followed by discussions informed by Tanner's Union representative. Both BD LaPlace and the Union, when taking into account safety concerns presented by Tanner's reported conduct, concluded that the FFDE was proper. Based on uncontroverted reports by coworkers regarding potential safety threats, BD LaPlace could have reasonably believed that a medical examination was job-related and consistent with business necessity. See Brownfield, 612 F.3d at 1146.

Tanner fails to offer any evidence that would controvert BD LaPlace's submission. In argument, Tanner contends that he submitted a medical form to BD LaPlace in which he stated that he

---

after an incident where he made threats of spilling blood at a local church.

was "behaving appropriately."  Tanner, however, does not present any form or document in support of this position.[6]  The Court thus finds no genuine factual dispute in the record that BD LaPlace's decision to refer Tanner to the EAP and mandating that he submit to the FFDE was reasonable under the ADA; BD LaPlace is entitled to judgment as a matter of law dismissing Tanner's claim that BD LaPlace violated the ADA by requiring that he submit to a medical examination as a condition of continued employment.

*C.*

Insofar as Tanner claims that he was retaliated against in violation of the ADA for failing to submit to the FFDE, BD LaPlace responds that Tanner failed to exhaust his administrative remedies by not alleging or describing retaliation in his EEOC Charge and, therefore, his claim must be dismissed. The Court agrees.

"[T]he filing of a charge of discrimination with the EEOC is a condition precedent to the bringing of a civil action under Title VII." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir. 1970). A district court may properly dismiss a retaliation claim for failure to reference retaliation on the EEOC Charge. See

---

[6] Even if such form were attached, the Court notes that the form was not exchanged as part of the discovery process and has not been authenticated.

<u>Teffera v. N. Texas Tollway Auth.</u>, 121 F. App'x 18, 21 (5th Cir. 2004).

Given that Tanner did not allege or describe retaliation in his EEOC charge, nor did he check the box for retaliation on either the EEOC Intake Form nor the Charge Form, the Court finds that Tanner did not exhaust his administrative remedies with the EEOC on his retaliation claim.[7]  Additionally, Tanner has apparently abandoned his ADA retaliation claim by not addressing it in his opposition papers.  For these reasons, Tanner's retaliation claim must be dismissed.

*D.*

Tanner claims that BD LaPlace discriminated against him when it perceived him as disabled by placing him on leave pending the

---

[7] Even if Tanner exhausted his administrative remedies, he would need to show that (1) he participated in an activity protected under the statute; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action.  <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 556-57 (5th Cir. 2007). Here, Tanner contends that his refusal to submit to the FFDE is a protected activity; however, as the Court has already noted, an employer may order a medical evaluation if job-related and consistent with business necessity.  Given that the Court has already determined that the summary judgment evidence supports BD LaPlace's submission that it acted reasonably within its rights under 42 U.S.C. § 12112(d)(4) (and the EEOC guidance) to require a medical examination to ensure workplace safety -- even if Tanner had exhausted his retaliation claim -- he would not be able to show that he had engaged in protected activity on this record.

medical examination and then fired him when he failed to submit to the FFDE. Insofar as this claim is for ADA discrimination, BD LaPlace seeks summary judgment dismissing it, contending that Tanner is judicially estopped from asserting a claim for disability discrimination, and that he cannot prove his prima facie case because an EAP referral for a mandatory FFDE is not sufficient to prove that an employer regards the employee as disabled. The Court agrees.

The equitable doctrine of judicial estoppel, which is designed to reduce the risk of inconsistent court determinations, "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or earlier proceeding." See Hopkins v. Cornerstone America, 545 F.3d 338, 347 (5th Cir. 2008)(citation omitted). The Fifth Circuit has recognized these three requirements: (1) the plaintiff's position must be "clearly inconsistent" with a previous position; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." In re Superior Crewboats, Inc., 374 F.3d 330, 335 (5th Cir. 2004)(citations omitted). Administrative proceedings are prior legal proceedings under the doctrine. See Simon v. Safelite Glass Corp., 128 F.3d 68, 72 (2d Cir. 1997)(holding that employee's statements, under

penalty of perjury, to Social Security Administration, that he was "unable to work" judicially estopped him from claiming that he was qualified to perform duties required for his position).

"[P]ursuit, and receipt of [social security disability] benefits does not automatically estop the recipient from pursuing an ADA claim." Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 797 (1999). Even so, "an ADA plaintiff cannot simply ignore [his disability] contention that []he was too disabled to work.... [He] must explain why that [disability] contention is consistent with [his] ADA claim that []he could 'perform the essential functions' of h[is] previous job, at least with reasonable accommodation.'" Id. Unless the plaintiff offers a "sufficient explanation" for the contradiction, "a plaintiff's sworn assertion in an application for disability benefits that []he is 'unable to work' will appear to negate an essential element of h[is] ADA case." Id. at 806.

Tanner's application to the SSA stated that he is "disabled" and the he "became unable to work due to his disabling condition on February 10, 2016." After reviewing this and voluminous medical records, the SSA determined that Tanner had been totally disabled since February 10, 2016. The defendant submits that Tanner's assertion that he is qualified to perform the essential functions

19

of his position is wholly inconsistent with his sworn statement to the SSA. The defendant also submits that Tanner himself has admitted in his deposition that he cannot perform the essential functions of crane operator. This is undisputed.

Tanner has submitted no evidence and made no effort to demonstrate that he was a *qualified* individual with a disability. Nor has he offered any explanation to reconcile the inconsistencies between his SSA application (in which he claims total disability) and his ADA claim (in which he claims that he is and was qualified to perform as a crane operator but that his employer wrongfully terminated him after evidently regarding him as disabled). In fact, the only explanation offered in Tanner's deposition testimony is an <u>admission</u> that he is (and was) unable to perform the essential functions of crane operator. Whether he is judicially estopped from making out his ADA claim due to his failure to adequately explain his inconsistent positions, or whether he has failed to submit any evidence on an essential element of his claim (i.e., he is qualified to perform the essential functions of his job, with or without accommodation), his ADA discrimination claim cannot withstand summary judgment. <u>See</u> <u>Cleveland</u>, 526 U.S. at 805-06 (holding that "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of

the earlier SSDI total disability claim.  Rather, [ ]he must proffer a sufficient explanation.").

Again, Tanner's singular argument in support of his disability discrimination claim is that BD LaPlace mandated that he undergo FFDE and, the argument goes, that fact alone proves that BD LaPlace regarded Tanner as disabled.[8]  But Tanner fails to offer any evidence or legal authority in support of his argument. Simply put, an employer's perception that health problems may adversely affect an employee's job performance or workplace safety is not tantamount to regarding the employee as disabled.  Indeed, the case literature demonstrates an appreciation of the EEOC guidance in this realm, which permits employers to inquire into behavior that may compromise workplace safety.  For this reason, an EAP referral to a mandatory FFDE is insufficient to prove that an employer regards the employee as disabled.  See, e.g., Krocka v. City of Chicago, 203 F.3d 507, 515 (7th Cir. 2000)(fitness for

---

[8] Tanner does not attempt to controvert any of the defendant's evidence other than through repeated conclusory statements that Tanner must have been perceived as disabled if he was terminated for failing to submit to the FFDE. Nowhere in the record does it show, nor does Tanner submit, that BD LaPlace regarded him as disabled.  Even if Tanner's proffered medical records were properly authenticated, Tanner fails to demonstrate how they contribute to BD LaPlace's perception of him as disabled or how he was discriminated on the basis of that perceived disability.

duty evaluations and other steps taken by employer to reassure itself that employee is fit for duty where there is a concern about employee's ability to perform particular job are not proof that employer regarded employee as disabled); Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 808 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000)(request that employee undergo examination to determine fitness for job does not prove that employer regarded employee as disabled); Cody v. CIGNA Healthcare of St. Louis, Inc., 139 F.3d 595, 599 (8th Cir. 1998)("A request for [a mental] evaluation is not equivalent to treatment of the employee as though she were substantially impaired.  Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims[.]").

Just as he fails to offer evidence that would support a finding that BD LaPlace regarded him as disabled, Tanner likewise fails to even attempt to reconcile the inconsistencies in his SSA disability application and his ADA lawsuit.  Insofar as Tanner's ADA discrimination claim is distinct from his claim that BD LaPlace violated the ADA in mandating that he submit to a medical examination, BD LaPlace is entitled to judgment as a matter of law dismissing this claim.

IV.

Tanner, lastly, seeks reimbursement on a prorated basis for the $1,000 check he was prevented from cashing when BD LaPlace stopped payment. He contends that because he worked 63 of the 90 days of the first quarter of 2016, he is entitled to $700 (of the $1,000 bonus) and that refusal to pay that amount violates the LWPA. The defendant counters that the plaintiff was paid all wages due from BD LaPlace; it further submits that that the bonus check was issued by mistake, there is no written agreement between Tanner and BD LaPlace to issue this bonus, and Tanner himself has admitted that he is unaware why he received the check or the purpose of the bonus. Because Tanner has not shown contractual entitlement to the bonus, his claim is without merit.

The LWPA imposes liability on an employer that fails to timely pay wages owed to an employee after he is terminated. La.R.S. § 23:631(A)(1)(a). Incentive-based bonuses are considered wages under La.R.S. § 23:634, which provides that "...employees shall be entitled to the wages actually earned up to the time of their discharge or resignation." <u>See</u> <u>Pender v. Power Structures, Inc.,</u> 359 So. 2d 1321, 1323 (La. Ct. App. 4 Cir. 1978).[9] Whether a bonus

---

[9] In <u>Pender</u>, the employer's bonus plan provided for quarterly bonuses payable from a calculable portion of the profits for the

constitutes an "amount then due" is a mixed question of law and fact. See Thorne v. Bard Peripheral Vascular, Inc., No. 16-262, 2016 WL 3746148, at *7 (E.D. La. July 13, 2016)(Feldman, J.)(citations omitted). "When Louisiana courts uphold continued employment conditions, it is generally because some part of performance on the part of the employee, in addition to mere continued employment, is still due." Id.

To be sure, before the Court determines whether a continued employment condition is viable, the Court must consult the written employment agreement to determine whether an employer agreed to pay a bonus and whether the bonus is conditioned upon continued employment. Thus, to prevail on a wage claim seeking an unpaid bonus, the plaintiff must first prove that there was a written agreement that entitles him to the bonus and demonstrate that the bonus was not paid. See Acosta v. Boudreau & Thibodeau's Cajun Cookin' Inc., No. 16-14897, 2017 WL 3521595, at *3 (E.D. La. Aug.

_____

bonus period, payable within 30 days of the end of the bonus period and limited to a percentage of the employee's salary. The state court of appeal held that the plan's rule that employees must be employed at the time of payment was against public policy. "[T]he requirement of continued service *in this particular bonus plan* is unenforceable as against public policy and plaintiffs are accordingly entitled to collect the bonuses which constituted part of the compensation promised to them for services performed during the bonus period." Id. (emphasis added).

16, 2017). Here, there is no written agreement in the record demonstrating that Tanner is entitled to (any portion of) the $1,000 check that BD LaPlace issued, then cancelled.[10] Because the plaintiff has failed to offer any evidence on an essential element of his wage claim, BD LaPlace is entitled to judgment as a matter of law dismissing the LWPA claim.

Accordingly, IT IS ORDERED: that the plaintiff's motion to strike is DENIED, and BD LaPlace's motion for summary judgment is hereby GRANTED. The plaintiff's claims against BD LaPlace are dismissed.

New Orleans, Louisiana, March 27th, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[10] In his deposition, Tanner admits that there was no employment agreement: he says he does not know the purpose of the bonus or if he is entitled to it under his union agreement. BD LaPlace submits that the bonus was intended to compensate all current employees for ratifying the CBA, which was ratified on April 4, 2016 -- a month after BD LaPlace processed Tanner's discharge as a voluntary resignation for job abandonment, effective March 4, 2016.

25